IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NN&R, INC.,

                    Plaintiff,

        v.

ONE BEACON INSURANCE GROUP,
and its successor, derivative
or acquiring entities and
TRIESTER, ROSSMAN &
ASSOCIATES, INC.,

                Defendants.

HON. JEROME B. SIMANDLE

Civil No. 03-5011 (JBS)

**OPINION**

APPEARANCES:

Daniel B. Zonies, Esq.
LAW OFFICES OF DANIEL B. ZONIES
1522 Route 38
Cherry Hill, New Jersey 08002
    Attorney for Plaintiff

Mark J. Hill, Esq.
Diana L. Moro, Esq.
MARK J. HILL & ASSOCIATES, P.C.
400 North Church Street
Suite 250
Moorestown, New Jersey 08057
    Attorneys for Defendant One Beacon Insurance Group

Cheryl M. Nicolson, Esq.
MALLON & BLATACHER, ESQS.
608 N. Broad Street
Suite 310
Woodbury, New Jersey 08096
    Attorney for Triester, Rossman & Associates, Inc.

Eugene M. Purcell, Esq.
PURCELL, RIES, SHANNON, MULCAHY & O'NEILL, ESQS.
One Pluckemin Way
P.O. Box 754
Bedminster, New Jersey 07921
    Attorney for Third-Party Defendant W. Hargrove Demolition
    Co., Inc.

**SIMANDLE**, U.S. District Judge:

This action arises from the structural collapse of a building at 326 Market Street, Camden, New Jersey. Plaintiff NN&R, Inc. ("NN&R"), a New Jersey corporation and the owner of a restaurant, Bill's Deli, and apartment units located at that address, alleges that the building was severely damaged in February 2000 when the contiguous property collapsed and was then legally demolished. Prior to that event, CGU Insurance, the predecessor to OneBeacon Insurance Group ("OneBeacon"), issued insurance policies to NN&R through Triester, Rossman & Associates, Inc. ("Triester" or "TRA") which provided property and liability coverage.

Currently pending before the Court are the following motions:

1.  Motion for summary judgment by OneBeacon against Plaintiff [Docket Item 60];

2.  Motion for summary judgment by Plaintiff against OneBeacon [Docket Item 86];

3.  Motion for summary judgment by OneBeacon against Triester [Docket Item 85];

4.  Motion for summary judgment by Triester against Plaintiff [Docket Item 84];

5.  Motions in limine to preclude testimony of Julian Toneatto by OneBeacon [Docket Item 82], Triester [Docket Item 96] and Hargrove [Docket Item 91]; and

6.  Motions in limine to preclude testimony of James Klagholz by OneBeacon [Docket Item 83] and Triester [Docket Item 97].

2

The Court heard oral argument on these motions on Wednesday, May 18, 2006.  The Court will decide at this time only the cross-motions for summary judgment by Plaintiff and OneBeacon, the motions in limine to preclude testimony of Julian Toneatto, and the motion for summary judgment by Triester against Plaintiff. The Court will reserve decision as to the remaining motions.

## I.   BACKGROUND

### A.   The Policy

In 1994, TRA completed an application on behalf of NN&R for a Concept One Policy, covering personal property, general liability, real property, and business interruption losses, which it submitted to OneBeacon.  As the policy was approaching the July 1999 renewal, Triester wrote to OneBeacon requesting a reduction of the premium rate on the policy.[1]  Maureen Herr, the underwriter for OneBeacon, responded that due to a high loss ratio, OneBeacon would not decrease the premium on the policy. On May 28, 1999, a renewal policy was issued for a one-year period commencing July 11, 1999.  The building coverage limit on the policy was $228,000 on a replacement cost valuation, with no coinsurance and a $500 deductible.  The policy further provided for business income loss coverage on an "actual loss sustained" basis with no waiting period applicable.  TRA transmitted the

---

[1] OneBeacon's predecessor, CGU, and Triester were parties to an Agency Agreement granting Triester the authority to operate as OneBeacon's agent.  (Pl. Ex. 2.)

3

renewal policy to NN&R on June 1, 1999, requesting that NN&R
review the policy.[2]  The letter also stated that the premium for
the policy would be directly invoiced by CGU.

By letter dated July 8, 1999, Ms. Herr requested a cost
estimator within 45 days, advising that if one were not received
the policy would be endorsed to 80% coinsurance with actual (as
opposed to replacement) cash value.  According to Mr. Kaysen, he
then contacted NN&R and advised that OneBeacon wanted to conduct
a replacement cost evaluation.  Mr. Kaysen testified at his
deposition in this matter that he told NN&R that the building was
likely valued in excess of $228,000 and, therefore, that
OneBeacon would increase the premium unless NN&R agreed to
coinsure at actual cash value.  According to Mr. Kaysen, however,
NN&R did not want to pay higher premiums and, thus, agreed to
modify the conditions of coverage to be actual cash value instead
of replacement value.  Mr. Kaysen therefore responded to
OneBeacon's request to forward a cost estimator for the property:
"OK, 80% coinsurance."  That response, communicated by a hand
written notation on the July 8, 1999 letter from Ms. Herr, was
faxed by TRA to CGU on July 12, 1999.[3]

---

[2] William Rosenberg is the sole shareholder of NN&R.  Unless
otherwise specified, this Opinion will refer to Mr. Rosenberg as
NN&R.

[3] According to correspondence between Scott Davis of TRA and
OneBeacon in July, 2001, however, TRA claims that it had
requested 80% coinsurance for NN&R, but only for the building

4

On July 16, 1999, CGU reissued a policy commencing July 11, 1999 for a term of one year.  That policy included building coverage at actual cash value with a limit of $228,000 and 80% coinsurance.  The business income and rental loss portion of the coverage were also changed to a stated limit ($30,800) as opposed to an actual loss sustained basis.  The effective date of those changes, according to the Endorsement accompanying the renewal policy, was July 11, 1999.  OneBeacon maintains that these changes are consistent with its underwriting guidelines which previously been furnished to TRA.  Though the endorsement was sent to TRA and NN&R, both Mr. Kaysen and NN&R maintain that they were unaware that the business interruption coverage would be changed.

        B.   Payments Under the Policy

On February 25, 2000, the properties contiguous to 326 Market Street collapsed onto themselves, causing damage to Plaintiff's property.  Shortly thereafter, Plaintiff called TRA, which in turn contacted OneBeacon, to advise of the collapse. Eventually, the City of Camden hired W. Hargrove Demolition Co., Inc. ("Hargrove") to raze the partially collapsed buildings

---

coverage, not for loss of income.  TRA requested that the policy be amended to correct what TRA considered an "error."  Ms. Herr, on behalf of OneBeacon, denied TRA's request, explaining that pursuant to the "Concept One product guide," when coverage is provided on an "actual cash value" basis, actual loss sustained coverage is not also available.

5

adjacent to Plaintiff's property.  According to the Complaint, the demolition further damaged NN&R's property.[4]

On May 15, 2000, OneBeacon made a $15,000 payment to NN&R under the Duties After Loss provision of the Commercial Property Conditions section under the policy.  The May 15th payment was followed by payments of $12,000 and $10,000 under the Business Interruption Coverage provision on June 14, 2000 and September 18, 2000 respectively.

On May 2, 2002, OneBeacon issued a $20,000 check to NN&R for business interruption, and an additional $15,000 for damage to the building.  On May 19, 2002, OneBeacon paid what it considered the remainder due under the policy, $109,908.01.  In total OneBeacon has paid $181,908.01, consisting of $42,000 on the business income coverage,[5] and $139,908.01 for the property damage.  According to OneBeacon, because the policy was written on an actual cash value basis, a "depreciation holdback" of $13,322.99 was applied to the property loss.

C.  Department of Banking and Insurance Proceedings

On April 17, 2001, OneBeacon mailed to Plaintiff a notice of non-renewal of insurance, stating that the policy would not be

---

[4] OneBeacon concedes that the damage resulting from the collapse and demolition of the adjacent building constitute covered losses under the policy.

[5] According to OneBeacon, the business income loss was calculated based on a monthly sum of $5,003, as determined by an independent accounting firm.  This figure is not disputed.

renewed after its expiration on July 11, 2001.  According to the notice, "the reason for the nonrenewal is due to the company's overall poor loss experience for this class of business, the company is reducing its restaurant exposures."  (Pl. Ex. 18.)

On April 30, 2001, William Rosenberg filed a complaint with the New Jersey Department of Banking and Insurance ("NJDBI"), Office of Insurance and Consumer Protection, alleging (1) that CGU had cancelled its coverage, and (2) that CGU had not made sufficient payments under the policy for business interruption loss.  (Pl. Ex. 19.)  By letter to the NJDBI dated June 5, 2001, OneBeacon responded to the complaint, explaining (1) that the loss ratio of the property for years 1994-99 was excessive; and (2) that the renewal policy re-issued on July 16, 1999 was written on an actual cash value basis at 80% coinsurance.  (Pl. Ex. 5.)  On October 5, 2001, TRA wrote to the NJDBI alleging that OneBeacon "forced" TRA to agree to change the policy to actual cash value.  In any event, TRA stated, OneBeacon did not advise that the Business Income Loss portion of the policy would also be changed to a stated limit from actual loss sustained.

On January 2, 2002, NJDBI wrote to OneBeacon, stating, in part:

> In this instance, the insured was not informed of the automatic coverage reduction of his Business Interruption coverage when he elected to reduce his property coverage to Actual Cash Value from Replacement Cost coverage.  As a result, when a loss occurred, the insured did not receive as much Business Interruption

> benefits as he expected.  OneBeacon is responsible for
> the actions of its agents; as such, this claim should
> be reconsidered for payment of the full Business
> Interruption benefits as originally available on this
> policy.

(Pl. Ex. 22.)  On January 3, 2002, NJDBI notified William

Rosenberg that his complaint against OneBeacon had been forwarded

on to the Office of the Insurance Ombudsman.  (Pl. Ex. 23.)

By letter dated February 12, 2002, OneBeacon notified the

Office of the Insurance Claims Ombudsman that the NN&R policy

would be changed from actual cash value to replacement cash value

and, thus, that "the stated amount coverage of $30,800 is no

longer in effect."  (Pl. Ex. 24.)  Accordingly, OneBeacon

acknowledged that it would pay NN&R's claim for business

interruption for up to one year with no monthly limit.  (Id.)

According to OneBeacon's calculations, that amount totaled

$60,036.[6]  (Pl. Ex. 25.)

          D.    Related State Court Actions

On July 6, 2001, Plaintiff filed a complaint in the Superior

Court of New Jersey, Law Division, Camden County, against Triple

C Enterprises and Christine Allen Jackson, owners of the property

adjacent to Bill's Deli, to recover damages for, inter alia, the

cost of repair of the property, lost wages and lost business.

_____

          [6] It appears that the policy was renewed for the term
commencing July 11, 1999.  (Pl. Ex. 25.)  On April 23, 2002,
OneBeacon noticed NN&R that the policy would be cancelled
effective May 13, 2002 for non-payment of premiums.  (OneBeacon
Ex. B, Final Page.)

8

(OneBeacon Ex. Q.)  NN&R obtained a $450,000 judgment against Triple C Enterprises, which resulted in a lien against the properties owned by Triple C Enterprises for that amount.

Meanwhile, in 2003 OneBeacon filed a subrogation action against Triple C Enterprises, Christine Allen Jackson, and Hargrove in Superior Court of New Jersey, Camden County, Law Division, seeking a determination of allocation of liability among the parties for the damage sustained by NN&R.[7]  On July 21, 2005, Plaintiff brought an action against Hargrove in Superior Court, Camden County, for damages to the property and loss of business income.  (OneBeacon Ex. U.)

        E.   Procedural History

On September 5, 2003, Plaintiff, together with William Rosenberg, NN&R's sole shareholder, filed a complaint against OneBeacon in Superior Court, Camden County, New Jersey, alleging claims of breach of contract and common law fraud, as well as claims under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20.  (Compl.)  The case was removed to this Court by OneBeacon on October 22, 2003.  On October 28, 2003, OneBeacon filed a third-party complaint against Triester alleging negligence and breach of the Agency Agreement between Triester and OneBeacon's predecessor, CGU, executed on December 18, 1998. (See Third-Party Compl. ¶¶ 24, 25.)

_____

    [7] That action was stayed until April 28, 2006.

9

OneBeacon subsequently moved on March 11, 2004 for dismissal and a more particularized pleading of the fraud claims asserted by Plaintiff in the original complaint.  By Order dated May 7, 2004, this Court dismissed all claims asserted by William Rosenberg individually, and granted OneBeacon's motion for a more particularized pleading, requiring Plaintiff to file and serve an amended complaint.  Plaintiff filed its Amended Complaint on May 27, 2004 against OneBeacon and Triester, claiming breach of contract, bad faith dealing and common law fraud, as well violations of the New Jersey Consumer Fraud Act and the New Jersey Unfair Claim Settlement Practices Act, N.J.S.A. 17B:30-13.1. (Am. Compl.)

On July 19, 2004, Triester filed a cross-claim against OneBeacon for contribution and/or indemnity.  On April 8, 2005 OneBeacon filed a cross-claim against Triester identical in substance to its third-party claim.  On October 6, 2005, Triester made a demand for indemnification, including attorney's fees and costs, against all liability arising out of the errors and omissions of OneBeacon.  Defendant Third-Party Plaintiff OneBeacon moved to sever and compel arbitration of all claims between itself and Defendant/Third-Party Defendant Triester.  In an Opinion and Order dated January 30, 2006, the Court held that OneBeacon had waived its right to compel arbitration and,

therefore, denied the motion.[8]

Meanwhile, OneBeacon filed a motion to dismiss Plaintiff's Amended Complaint on August 5, 2004.  On October 14, 2004, Triester filed a motion under Fed. R. Civ. P. 12(c), seeking judgment on the pleadings in its favor and against Plaintiff. The Court treated with the motions separately, granting each in part, in Opinions and Orders filed March 15, 2005 and June 28, 2005, respectively.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can

---

[8] Triester filed a third-party complaint against Triple C Enterprises, Inc., and W. Hargrove Demolition Co., Inc. on February 25, 2005.  On April 25, 2006, the Clerk entered default against Triple C Enterprises, Inc. for failure to appear, plead, or otherwise defend.

11

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Liberty Lobby</u>, 477 U.S. at 250; <u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

## III. DISCUSSION

    A.   <u>Cross-Motions for Summary Judgment by OneBeacon and Plaintiff</u>

The remaining claims by Plaintiff against OneBeacon are for breach of contract (Count I) and bad faith dealing (Count III). For the reasons now explained, the Court will deny the cross-motions.

    1.   <u>Count I – Breach of Contract</u>

In Count I Plaintiff claims that OneBeacon breached the policy terms by failing to make certain payments following the damage sustained to the insured property.

    a.   <u>Which Policy Was In Effect</u>

Intially, the Court must determine which policy was in effect at the time NN&R sustained the property damage. Depending on whether the policy covered actual cash value or replacement cost value for building coverage, OneBeacon' obligations under the policy will differ.[9]  For reasons now explained, the Court

_____

[9] As to business interruption loss, however, OneBeacon has already made payments to NN&R based on an actual loss sustained basis rather than a stated limit pursuant to the NJDBI's determination.  Accordingly, the Court's holding as to which policy was in effect at the time of the loss is not dispositive as to the business income loss claim.

holds that the renewal policy reissued on July 16, 1999 was in effect on February 25, 2000.

It is well-settled in New Jersey, that "[w]hen an insured purchases an original policy of insurance he may be expected to read it and the law may fairly impose upon him such restrictions, conditions and limitations as the average insured would ascertain from such reading." Bauman v. Royal Indemnity Co., 36 N.J. 12, 25 (1961).

> However, where the stated period of coverage in the original policy is about to expire and the insurance company simply sends a renewal policy for the new period of coverage, the insured, in all likelihood, will not read it over again and may not fairly be expected to do so.  Absent notification that there have been changes in the restrictions, conditions or limitations of the policy, the insured is justly entitled to assume that they remain the same and that his coverage has not in any way been lessened.

Id.

Here, as detailed above, on May 28, 1999, a renewal policy was issued to NN&R by OneBeacon for a one-year period commencing July 11, 1999 ("Policy A").  The building coverage limit on the policy was $228,000, on a replacement cost valuation, with no coinsurance and a $500 deductible.  The policy further provided for business income loss coverage on an "actual loss sustained" basis with no waiting period applicable.  On July 16, 1999, CGU reissued the renewal policy covering that same one year term. ("Policy B").  That policy included building coverage at actual cash value with a limit of $228,000 and 80% coinsurance.  The

business income and rental loss portion of the coverage were also changed to a stated limit ($30,800) rather than actual loss sustained.

Which policy was in effect at the time of the property damage on February 25, 2000?  Based on the above, the answer to this question depends firstly on whether Plaintiff had notice of the changes in the restrictions, conditions or limitations of the policy expiring on July 11, 1999.  OneBeacon argues that the changes included in Policy B were accepted by Plaintiff without objection and, therefore, that the policy was valid.  Plaintiff, on the other hand, argues that the issuance of the July 16, 1999 renewal policy constituted a prohibited "mid-term reduction[] in coverage" under N.J.A.C. § 11:1-22.2(a).

As already discussed, Mr. Herr sent a letter dated July 8, 1999 to TRA requesting a cost estimator within 45 days, advising that if one were not received the policy would be endorsed to 80% coinsurance with actual (as opposed to replacement) cash value.[10] Mr. Kaysen subsequently responded on July 12, 1999: "OK, 80% coinsurance."[11]  On July 16, 1999, the renewal policy was

---

[10] Pursuant to the Loss Conditions section of the policy, OneBeacon was entitled to make a written demand for an appraisal of the value of the property.  (OneBeacon Ex. H.)

[11] Whether TRA had actual authority to agree to this modification is not dispositive as to the breach of contract claim against OneBeacon because, as NN&R's broker, TRA had at least apparent authority to negotiate and effectuate the insurance contract from OneBeacon, see N.J.S.A. 17:22A-2(g).

14

reissued to include building coverage at actual cash value with a limit of $228,000 and 80% coinsurance, and business income coverage with a limit of $30,800.[12]  Copies of the renewal policy were sent to TRA and NN&R.

Additionally, the coverage changes were consistent with its underwriting guidelines which OneBeacon had previously furnished to TRA.  OneBeacon's underwriting guidelines for the Concept One Policy provided that coverage for loss of income on an actual loss sustained basis would only be allowed if the building coverage were on a replacement cost basis; if the building were insured on an actual cash value basis, however, business interruption coverage would be provided only at a stated value. (Sec. G(3), OneBeacon Ex. C.)

Based on the above, Plaintiff had notice of the relevant policy changes even prior to the issuance of the renewal policy. That NN&R may not have itself reviewed the agreement is not dispositive.  Because Mr. Kaysen was acting as Plaintiff's representative in negotiating and effectuating the insurance

---

Restatement (Second) Agency § 27 ("[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.").

[12] According to correspondence between Scott Davis of TRA and OneBeacon in July, 2001, TRA claimed that it had intended to request actual loss sustained coverage for the building only, not for loss of income.

contract from OneBeacon, see N.J.S.A. 17:22A-2(g), notice of revised coverage to Mr. Kaysen was sufficient.  Unlike Bauman, 36 N.J. 12, the insured here employed the assistance of "a professional insurance intermediary," Aden v. Fortsh, 169 N.J. 64, 86 (2001), to examine whether coverage had in any way been lessened.  As such, TRA should have examined the policy for any material changes.  Accord id., 169 N.J. at 86 (holding "when an insured employs the assistance of a professional insurance intermediary . . . the insured then has the right to rely on the skilled broker's presumed competence in executing the instructions given").

Notwithstanding the foregoing, however, neither TRA nor NN&R voiced any timely objection; in fact, Triester first raised questions about the policy terms in July 2001, over one year after the renewal policy had expired.[13]  For these same reasons, Plaintiff is incorrect that the July 16, 1999 renewal policy constituted a prohibited "mid-term reduction[] in coverage" under N.J.A.C. § 11:1-22.2(a)(1), which prohibits

---

[13] Additionally, because Plaintiff had notice of the policy changes and paid the policy premium for the policy term without objection, the fact that the renewal policy was reissued after July 11th is not dispositive.  See Royal Oak Sch. Dist. v. MASB-SEG Property and Casualty PPL, Inc., 2003 Mich. App. LEXIS 2352, at *11-12 (Mich. Ct. App. Sept. 16, 2003) (finding adequate notice and rejecting contention that defendant's exclusion was a prohibited mid-term policy change where plaintiff paid the policy premium even though renewal and exclusion information was not sent to plaintiff until after the policy period began).

> Effecting or attempting to effect a mid-term premium increase and/or a reduction in the amount or type of coverage provided under the policy unless prior written approval therefor has been obtained from the Commissioner.

Even if there were questions of fact as to whether the changes constituted "a reduction in the amount or type of coverage, Plaintiff accepted the changes by paying the premium and failing to otherwise object. See, e.g., Royal Oak Sch. Dist., 2003 Mich. App. LEXIS 2352, at *11-12.

In light of the above, the Court agrees with OneBeacon that the Policy B was valid; the notice of the policy change was sufficient and, in any event, was acceded to by Triester, as Plaintiff's agent.[14] Accordingly, the Court holds as a matter of law that the July 16th policy was in effect at the time Plaintiff sustained the alleged damages.

For the following reasons, however, the Court holds that material issues of disputed fact regarding the sufficiency of payments under the policy prevent summary judgment in favor of either Plaintiff or OneBeacon on the breach of contract claim.[15]

---

[14] The NJBDI also found that Plaintiff "elected to reduce his property coverage to Actual Cash Value from Replacement Cost coverage." (Pl. Ex. 22.)

[15] Initially, OneBeacon argues that summary judgment should be granted as to the breach of contract claim because NN&R has jeopardized OneBeacon's subrogation rights. Plaintiff filed a state court action for damages on July 6, 2001, against Triple C Enterprises and Christine Allen Jackson, seeking recovery for damages sustained to its property following the collapse of the building owned by those defendants. (OneBeacon Ex. Q.) NN&R

17

b.   <u>Business Interruption Loss</u>

OneBeacon made payments on an actual cash value basis for business interruption losses for 8.3 months following the loss at $5,003 per month.  The $5,003 figure is not in dispute.  The parties also agree that the policy explicitly limits payments under the business coverage provision to the "period of restoration," which begins immediately after the direct loss, and continues through the date when the property could have been rebuilt with reasonable speed and similar quality.

Defendant OneBeacon argues that Plaintiff is estopped from re-litigating the issue of coverage for business interruption losses, as that determination has already been made by the NJDBI.  As already explained, there is no dispute that OneBeacon has covered business income loss on an actual loss sustained basis for 8.3 months at $5,003 per month.  The only question remaining is whether OneBeacon should have extended payments beyond 8.3 months.  The NJBDI determination, though, did not reach that

---

obtained a $450,000 judgment against Triple C Enterprises, which resulted in a lien against the property owned by Triple C Enterprises for that amount.
    In 2003, OneBeacon filed a subrogation action against Triple C Enterprises, Christine Allen Jackson, and Hargrove in Superior Court of New Jersey, Camden County, Law Division, to determine allocation of liability for the damage sustained by NN&R. Considering (1) the pending action by OneBeacon, (2) that OneBeacon had notice of Plaintiff's action against Triple C, and (3) the parties' representations that the lien against Triple C will not likely satisfy the $450,000 judgment, the Court holds that OneBeacon's subrogation rights have not been jeopardized.

18

question; its determination was limited to the type, not duration, of coverage.  Therefore, OneBeacon's estoppel argument fails.

In any event, the Court finds that there are questions of fact as to the length of the "period of restoration" which preclude summary judgment in favor of either party.  Under the policy, "period of restoration" is defined as the period of time that:

> a.   Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause at the described premises; and
>
> b.   Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.[16]

(OneBeacon Ex. G.)  Moreover, the Business Income Coverage Form, written on an actual loss sustained basis with no waiting period, covers "actual loss of Business Income . . . sustain[ed] due to the necessary suspension of . . . 'operations' during the 'period of restoration.'  The suspension must be caused by direct physical loss of or damage to the property . . . ."  (Id.)

The parties have submitted proofs disputing, among other

---

[16] The attached endorsement (OneBeacon Ex. G) provides:

2.   Paragraph a.(1) of the "Period of Restoration" definition is replaced by the following:
   (1)   Immediately after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises.

things, the appropriate period of restoration.  OneBeacon has submitted an October 16, 2001 letter from Crawford and Company to Plaintiff's counsel, providing a revised estimate and enclosing a proof of loss to be signed and returned by Plaintiff.  (OneBeacon Ex. N.)  That a final estimate was not prepared by OneBeacon's independent adjuster until almost two years after the February 25, 2000 accident highlights that material facts are in dispute regarding the period of restoration.[17]  As this factual issue bears upon the adequacy of OneBeacon's payments for business interruption losses, summary judgment is not appropriate.

Additionally, there are also questions of fact as to the cause of the suspension of business operations.  OneBeacon has submitted proofs suggesting that the delay in resuming business operations was caused, in part, by Plaintiff's inaction.  This material issue of fact should also be resolved by a jury.  For these reasons, summary judgment will be denied as to the business interruption portion of Plaintiff's breach of contract claim.

c.  <u>Property Loss – Actual Loss Sustained</u>

There is no dispute that damage sustained by Plaintiff's property constituted a loss covered by the policy.  Indeed, OneBeacon has to date made payments of $139,908.01 on the

---

[17] Indeed, the payments made by OneBeacon under the property loss section of the policy are based on a repair estimate provided by Langford Management on April 29, 2002, well over two years after the underlying incident.  (OneBeacon Ex. I.)

building damage claim.  Plaintiff claims, though, that he is entitled to more money under the policy.  Questions of fact preclude summary judgment in favor of either party.

       i.   <u>Timeliness of Commercial Property Coverage Claims</u>

OneBeacon first argues that Plaintiff's claims under the Commercial Property portion of the policy, covering structural damage to the property, are time barred.  For the following reasons, the Court holds that such claims are timely.

In New Jersey, the six year period of limitations for insurance actions may be shortened by contract.  <u>Azze v. Hanover Ins. Co.</u>, 336 N.J. Super. 630, 636 (App. Div. 2001) (citing <u>Breen v. New Jersey Mfg. Indemnity Ins. Co.</u>, 105 N.J. Super. 302, 309 (Law Div. 1969); <u>James v. Fed. Ins. Co.</u>, 5 N.J. 21 (1950)).  Here, the Commercial Property Conditions issued with the policy by OneBeacon provide:

    **D.**   **LEGAL ACTION AGAINST US**

        No one may bring a legal action against us [OneBeacon] under this Coverage Part unless:

        1.   There has been full compliance with all the terms of this Coverage Part; and

        2.   The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(OneBeacon Ex. P.)  Accordingly, the contractual two-year statute of limitations period included in the policy is binding on Plaintiff.

Plaintiff brought this action, however, over two years after the building owned by NN&R sustained damages; the building was damaged on February 25, 2000, and Plaintiff filed its complaint against OneBeacon on September 5, 2003.  Therefore, unless the doctrine of equitable tolling applies, Plaintiff's breach of contract claim relating to coverage under the Commercial Property portion of the policy is untimely.  Under that equitable doctrine, the limitations period is tolled between the time the insured gives notice of loss and the time that "liability is formally declined."  Azze, 336 N.J. Super. at 637 (quoting Peloso v. Hartford Fire Ins. Co., 56 N.J. 514 (1970)).

Here, shortly after the property at 326 Market Street sustained damage on February 25, 2000, Plaintiff called TRA, which in turn contacted OneBeacon, to advise of the loss.  On May 15, 2000, OneBeacon made a $15,000 payment to NN&R under the Duties After Loss provision of the Commercial Property Conditions section under the policy.  This was followed by payments of $12,000 and $10,000 under the Business Interruption Coverage provision on June 14, 2000 and September 18, 2000 respectively.  On May 2, 2002, OneBeacon issued a $20,000 check to NN&R for business interruption, and an additional $15,000 for damage to the building.  On May 19, 2002, OneBeacon paid what it considered the remainder due under the policy.

In light of the rationale underlying the holding in Peloso,

22

56 N.J. 514, that courts should not permit limitations periods to "tick[] away" while the insurance company investigates the loss, this Court holds that the limitations period at issue is tolled at least until May 19, 2002, the date of OneBeacon's final payment to NN&R under the policy.  Because this action was brought less than two years later, on September 5, 2003, the Court finds that the Complaint is timely.[18]

ii.  <u>Proof of Loss Requirement</u>

OneBeacon also maintains that Plaintiff has failed to provide a sworn statement of proof of loss as required by the policy and, therefore, that the breach of contract claim must fail as a matter of law.  Plaintiff argues that the proof loss requirement was substantially complied with, thereby defeating OneBeacon's argument.  The Court finds that questions of fact as to this issue preclude a determination as a matter of law.

"Where the giving of notice of loss or the furnishing of proofs of loss is a condition precedent of liability under an insurance contract . . ., noncompliance is fatal to recovery in the absence of a showing of waiver or at least of substantial compliance."  <u>Brindley v. Firemen's Ins. Co. of Newark, N.J.</u>, 35 N.J. Super. 1 (App. Div. 1955).  In <u>Tell v. Cambridge Mut. Fire</u>

_____

[18] That OneBeacon sent a notice of non-renewal of insurance on April 17, 2001, and again on April 23, 2002, should not effect the Court's determination as to when OneBeacon "formally denie[d] coverage," as OneBeacon continued to make payments to NN&R as late as May 19, 2002.

Ins. Co., 150 N.J. Super. 246 (Cty. D. Ct. 1974), the court excused the insured's failure to file a proof of loss within 60 days, as provided by the policy, where the plaintiff reported the loss to defendant's agent and enclosed a list of all items stolen and the value of each within six days of the loss.  The court held that "[i]n these circumstances there was substantial compliance with the policy requirement, as defendant was promptly and fully informed of all details of the loss."  Id.; see Resolution Trust Corp. v. Moskowitz, 1994 U.S. Dist. LEXIS 15259, at *22 (D.N.J. 1994) (noting under New Jersey law "a technical breach may not prevent coverage as long as there was substantial compliance with the policy requirements").

Here, under the Commercial Property Portion of the policy, NN&R is required in the event of loss or damage to the covered property to send OneBeacon a "signed, sworn proof of loss containing the information we [OneBeacon] request to investigate the claim," within 60 days after OneBeacon's request.  (Sec. 3(a)(vii), OneBeacon Ex. H.)  On October 16, 2001, almost two years after the underlying incident, OneBeacon's third-party adjuster, Crawford & Company, sent to Plaintiff's counsel a proof of loss to be signed and returned by NN&R.  (OneBeacon Ex. N.)

Plaintiff maintains, and OneBeacon acknowledges, that NN&R completed a "Sworn Statement in Proof of Loss" which it forwarded

to OneBeacon by letter dated July 23, 2002.[19]  The proof of loss form stated that "the amount claimed without prejudice under the above number policy is $600,000," but did not specify either the actual cash value of the property at the time of the loss or the dollar amount of "the whole loss and damage" sustained.  (Pl. Ex. B.)

In light of OneBeacon's delay in forwarding to Plaintiff a revised damage estimate and proof of loss form, as well as the fact that Plaintiff did submit to OneBeacon a proof of loss statement, the Court holds that the determination of whether Plaintiff's actions constituted substantial compliance with the proof of loss requirement involves questions of fact more appropriately left to a jury than decided at this time.

iii. <u>Property Loss Payments Under the Policy</u>

Finally, the Court holds that there are questions of fact as to whether OneBeacon has fulfilled its obligations under the property loss section of the policy.

On July 16, 1999, CGU reissued the renewal policy covering that same one year term.  That policy included building coverage at actual cash value with a limit of $228,000 and 80% coinsurance.  OneBeacon has paid $139,908.01 to date under the

_____

[19] That letter further advised that NN&R had filed suit against Triple C Corporation and its principles and that mandatory non-binding arbitration in that matter was scheduled for August 26, 2002.  (Pl. Ex. B.)

property loss portion of the policy.  According to OneBeacon,
this amount is based on a repair estimate provided by Langford
Management on April 29, 2002.  (OneBeacon Ex. I.)  In that
detailed report, Langford itemizes estimates for work including,
for example, demolition, replacing kitchen ceiling, replacing
kitchen lintel, replacing exterior bearing walls, replacing roof
sheathing, and replacing certain plaster ceilings and walls
throughout the property.

Plaintiff has submitted the report of Dr. Toneatto, the
President of Adler Engineering, Inc.[20]  On February 28, 2000, Dr.
Toneatto, together with Richard P. Mullen, Project Manager for

---

[20] Defendants have moved in limine to preclude the testimony
of Dr. Toneatto, arguing that the proffered testimony does not
satisfy the standards set forth in Daubert v. Merrell Dow Pharm.,
Inc., 509 U.S. 579 (1993) and Kumho Tire Co., Ltd. v. Carmichael,
526 U.S. 137 (1999), and therefore is inadmissible under Fed. R.
Evid. 102 and 702.  Though they do not object to his
qualifications as a civil engineer, Defendants argue that Dr.
Toneatto's reports are "based upon assumptions, guesses, and
other vague terminology rather than any degree of engineering
certainty."  (OneBeacon Br. at 11.)
    According to Defendants, in addition to lacking factual
support, Dr. Toneatto's opinions are based on faulty methodology
and, thus, his conclusions can not be properly tested.
Plaintiff argues that the competing expert report submitted by
OneBeacon should not act to displace this Court's gatekeeper
function.  See Crowley v. Chait, 322 F. Supp. 2d 530, 536 (D.N.J.
2004).  Plaintiff argues that the Court should allow a finder of
fact to evaluate these competing reports, rather than preclude
certain testimony in limine.
    The Court agrees with Plaintiff and finds that the opinion
and report meet the requirements of reliability set forth in
Daubert.  Therefore, Defendants' motion to exclude Dr. Toneatto's
report will be denied and the report and opinion of Dr. Toneatto
will be admissible under Fed. R. Evid. 702.

Adler Engineering, Inc., issued a report detailing the extent of
the damage sustained by NN&R's building.  The report concluded
that "this building is structurally unsafe and is in jeopardy of
the third floor collapsing through the floors below.  The
building should not be occupied." (OneBeacon Ex. T.)  The report
further recommended that certain repairs be completed
"immediately" so as to eliminate certain dangers and to ensure
the structural integrity of the building.

On March 2, 2000, Dr. Toneatto claims to have conducted a
"follow-up visit" to the site which revealed that the building
would collapse unless the recommendations offered in the February
28, 2000 report were implemented "immediately." (OneBeacon Ex.
B.)  On May 24, 2004, Dr. Toneatto advised Plaintiff that because
the recommended repairs were not made to the property, the
building was on the imminent verge of collapse and posed a
serious physical risk to those in its vicinity. (Id.)

On January 12, 2005, Dr. Toneatto revisited the property.
In a letter to Plaintiff, he noted his observations that "there
has been, in fact, much more deterioration which was totally
expected.  Predictably, all of the shear cracks mentioned in our
reports had widened signaling that the building is still moving
toward catastrophic failure." (OneBeacon Ex. V.)  Additionally,
Mr. Toneatto opined that these problems were unavoidable, and
that any work "that could have been done until now was to keep

the building from falling." (Id.) He then stated that in his "professional opinion," it would not be cost effective to attempt to repair the building. (Id.) Finally, on September 29, 2005, Dr. Toneatto wrote to Plaintiff estimating the demolition cost at $39,000 and a construction cost of $770,000, totaling $809,000. (OneBeacon Ex. B.)

The Court finds that the competing proofs submitted by Plaintiff and OneBeacon detailing the extent of damage to the property have created disputes of fact regarding the actual cash value of the damage sustained. Accordingly, the Court will deny the cross-motions for summary judgment as to the remainder of Plaintiff's breach of contract claim.

### 2.   Count III – Bad Faith Dealing

In Count III, Plaintiff claims an absence of good faith on the part of OneBeacon for (1) under-insuring the property and concealing information relating to that fact; (2) misrepresenting the terms of the policy; (3) failing to reinstate Plaintiff's restaurant insurance policy; (4) failing to inform Plaintiff of policy changes in or about July 16, 1999; (5) its deceptive and misleading actions in processing Plaintiff's claim; (6) intentionally defaulting on payments due; and (7) cancelling Plaintiff from future coverage without providing notice or

28

explanation therefor.[21]   (Am. Compl. Count III.)   OneBeacon
argues that it is entitled to summary judgment on this claim
because Plaintiff is not entitled to summary judgment on its
breach of contract claim.   (OneBeacon Br. at 27.)   In other
words, because there exist questions of fact as to whether
OneBeacon breached the agreement, Plaintiff cannot, as a matter
of law, demonstrate bad faith on the part of OneBeacon.

New Jersey courts imply a duty of good faith and fair
dealing in all contracts.   Paul Revere Life Ins. Co. v. Pataniak,
2004 U.S. Dist. LEXIS 7669, at *6 (D.N.J. 2004).   "[W]hen a
breach of the duty of good faith and fair dealing can be shown,
liability may be had in tort as well as in contract under New
Jersey common law.   Id. at *7.   In the context of a denial of
insurance benefits, New Jersey applies the "fairly debatable"
standard – "[i]f a claim is 'fairly debatable,' no liability in
tort will arise."   Pickett, 131 N.J. 473.   More specifically,

> [t]o show a claim for bad faith, a plaintiff must show
> the absence of a reasonable basis for denying benefits
> of the policy and the defendant's knowledge or reckless
> disregard of the lack of a reasonable basis for denying

---

[21] Initially, the Court will enter summary judgment in favor
of Defendant on Plaintiff's bad faith claims as they relate to
the sale, issuance, or cancellation of the policy.   New Jersey
courts have not extended the scope of bad faith claims beyond the
handling and payment of claims, and Plaintiff has offered no case
law or other persuasive authority suggesting otherwise.   See
Tarsio v. Provident Ins. Co., 108 F. Supp. 2d 397, 400 (D.N.J.
2000) ("The New Jersey Supreme Court has recognized a cause of
action for an insurance company's 'bad faith' failure to pay an
insured's claim.")

the claim.  It is apparent, then, that the tort of bad
faith is an intentional one. *** implicit in that test
is our conclusion that the knowledge of the lack of a
reasonable basis may be inferred and imputed to an
insurance company where there is a reckless ***
indifference to facts or to proofs submitted by the
insured.

Id. (citing Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I.

1980)); see also Polizzi Meats v. Aetna Life & Cas. Co., 931 F.

Supp. 328, 335 (D.N.J. 1996) (rejecting as a matter of law claim

for "bad faith" damages where plaintiff failed to demonstrate

that insurer lacked at least a "fairly debatable" basis in fact

upon which to deny coverage).  "[U]nder the 'fairly debatable'

standard, a claimant who could not have established as a matter

of law a right to summary judgment on the substantive claim would

not be entitled to assert a claim for an insurer's bad faith

refusal to pay the claim."  Pickett v. Lloyd's, 131 N.J. 457, 473

(N.J. 1993).  Therefore, to the extent that Plaintiff's bad faith

claim is based on a denial of benefits (even a partial denial),

as summary judgment was denied on the substantive breach on

contract claim, it will be granted in favor of OneBeacon as to

that portion of Count III alleging bad faith denial of benefits.

     Plaintiff also claims, however, that OneBeacon acted in bad

faith by delaying the processing of its claims.  In the case of

processing delay, bad faith is established by showing "that no

valid reasons existed to delay processing the claim and the

insurance company knew or recklessly disregarded the fact that no

valid reasons supported the delay."  Pickett, 131 N.J. at 481.

Plaintiff's claim here is in part based on processing delay; therefore, Plaintiff must show that OneBeacon had no valid reason to delay processing the claim and knew or recklessly disregarded that fact.  See Pickett, 131 N.J. at 481.

As noted above, OneBeacon did not forward to NN&R a proposed scope of work for building repairs until 10 months after the loss.  Moreover, although Plaintiff may not have timely submitted a sworn proof of loss, OneBeacon did not make the request until nearly 20 months after the loss.  OneBeacon, on the other hand, has submitted proofs tending to show that the delay was caused, at least in part, by Plaintiff's own inaction.  Accordingly, the Court holds that there are questions of fact as to whether any "valid reasons existed to delay processing the claim and [whether] the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay."  Pickett, 131 N.J. at 481.  Therefore, summary judgment will be denied as to the bad faith claim in Count III based on processing delay.

B.   Motion for Summary Judgment by Triester Against Plaintiff

The remaining claims asserted by Plaintiff against Triester are for common law fraud (Count I), breach of contract (Count I), consumer fraud (Count II), and bad faith dealing (Count III). Triester has moved for summary judgment arguing primarily that Plaintiff can not, as a matter of law, recover consequential damages against TRA.  (TRA Br. at 6-10.)

31

1.   <u>Fraud Claims</u>

_____Plaintiff claims that Defendant Triester fraudulently misrepresented that incremental increases in premiums under the policy would be accompanied by increases in coverage when, in fact, that was not the case.  Plaintiff claims that Triester's misrepresentations constitute common law fraud and violate the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 <u>et</u> <u>seq.</u>  "In order to articulate a cause of action for fraud, a plaintiff must show that the defendant made 'a material representation of a presently existing or past fact, . . . with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment.'"  <u>Mardini v. Viking Freight, Inc.</u>, 92 F. Supp. 2d 378, 385 (D.N.J. 1999) (quoting <u>Nappe v. Anschelewitz, Barr, Ansell & Bonello</u>, 97 N.J. 37, 51-52 (1984)).

> Under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2:
> The act, use or employment by any person of any
> unconscionable commercial practice, deception, fraud,
> false pretense, false promise, misrepresentation, or
> the knowing, concealment, suppression, or omission of
> any material fact with intent that others rely upon
> such concealment, suppression or omission, in
> connection with the sale or advertisement of any
> merchandise or real estate, or with the subsequent
> performance of such person as aforesaid, whether or not
> any person has in fact been misled, deceived or damaged
> thereby, os declared to be an unlawful practice . . . .

"An unconscionable commercial practice necessarily entails a lack of good faith, fair dealing, and honesty.  The capacity to mislead is the prime ingredient of all types of consumer fraud.

Mere customer dissatisfaction does not constitute consumer fraud."[22]   In re Van Holt, 163 F.3d 161, 168 (3d Cir. 1998).

Here, even looking at the facts in the light most favorable to Plaintiff as the Court must, Plaintiff's allegations do not constitute fraud.[23]   Mr. Kaysen testified, and Plaintiff does not dispute, that Kaysen did not read the relevant provisions of the policy before allegedly making certain material misstatements regarding the scope of coverage.   That Kaysen had copies of the policy does not mean that he had actual knowledge of the relevant terms.   Instead, it serves to highlight that Kaysen was at best negligent in performing his duties as an insurance broker.   See Aden, 169 N.J. at 86 (holding that the insured has the right to rely on the skilled broker's presumed competence in performing his duties).   Accordingly, the Court will grant summary judgment in favor of Defendant Triester on Plaintiff's fraud claims.

          2.   Breach of Contract

Plaintiff claims in Count I that Triester breached the terms of the policy by failing to make certain payments to Plaintiff in connection with the damage sustained to the insured property.

---

[22] It is well-settled that the Consumer Fraud Act applies to the sale of insurance policies.   Lemelledo v. Beneficial Management Corp. of America, 150 N.J. 255 ( 1997).

[23] The misrepresentations alleged by Plaintiff were made exclusively by Bob Kaysen, an employee of Triester.   (Am. Compl. ¶¶ 2-4.)   Because the misstatements were made by a Triester employee, they can be attributed to Triester.

TRA argues that as an "insurance producer," it had no responsibility for processing, adjusting or paying Plaintiff's claim; therefore, TRA argues, the claims for damages must be dismissed.  Moreover, Triester was not a party to the insurance policy.  For these reasons, the Court will enter summary judgment in Defendant's favor on the breach of contract claim.

> 3.   Bad Faith Dealing

Finally, in Count III Plaintiff claims that Triester committed "bad faith dealing" for, among other things, (1) under-insuring the property and concealing information relating to that fact; (2) misrepresenting the terms of the policy; and (3) failing to inform Plaintiff of policy changes in or about July 16, 1999.  (Am. Compl. Count III.)

An insurance broker owes a duty directly to his or her principal, the insured.  See John Roach, Jr., Inc. v. Pingpank, 39 N.J. Super. 336, 339 (App. Div. 1956).  Brokers are obligated to exercise good faith and reasonable skill in advising insureds. Sobotor v. Prudential Property & Casualty Ins. Co., 200 N.J. Super. 333, 337-41 (App. Div. 1984).  "[W]hen a breach of the duty of good faith and fair dealing can be shown, liability may be had in tort as well as in contract under New Jersey common law."  Pataniak, 2004 U.S. Dist. LEXIS 7669, at *6.

Here, Plaintiff has provided sufficient proofs to allow a reasonable factfinder to conclude that Triester did not exercise

reasonable skill in advising Plaintiff and procuring coverage from OneBeacon.  <u>See</u> <u>supra</u>.  Specifically, TRA admits that Kaysen never reviewed Policy B upon receiving it, and that it did not object to material changes in the coverage until over one year following the February 2000 incident.  Accordingly, the Court will deny TRA's motion as to the bad faith claim in Count III.

## IV.  CONCLUSION

For the reasons explained above, the Court holds as follows:

(1)   The renewal policy reissued by OneBeacon on July 16, 1999 was in effect, as a matter of law, on the date the damage was sustained to Plaintiff's property;

(2)   The cross-motions for summary judgment by OneBeacon and Plaintiff will be denied as to the claim for breach of contract in Count I;

(3)   The motion for summary judgment by OneBeacon as to Count III will be granted only as to that portion of the claim alleging bad faith denial of benefits; OneBeacon's motion will be denied as to the bad faith claim based on processing delay;

(4)   Plaintiff's motion for summary judgment as to Count III will be denied in its entirety;

(5)   Motions in limine to preclude testimony of Julian Toneatto will be denied; and

(6)   The motion for summary judgment by Triester against Plaintiff will be granted as to Counts I and II, but denied as to Count III.


<u>June 26, 2006</u>                     <u>  s/ Jerome B. Simandle  </u>
Date                                  JEROME B. SIMANDLE
                                      U.S. District Judge