IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NN&R, INC.,

                Plaintiff,

      v.

ONE BEACON INSURANCE GROUP,
and its successor, derivative
or acquiring entities and
TRIESTER, ROSSMAN &
ASSOCIATES, INC.,

                Defendants.

HON. JEROME B. SIMANDLE

Civil No. 03-5011 (JBS)

**OPINION**

APPEARANCES:

Daniel B. Zonies, Esq.
LAW OFFICES OF DANIEL B. ZONIES
1522 Route 38
Cherry Hill, New Jersey 08002
    Attorney for Plaintiff

Mark J. Hill, Esq.
Diana L. Moro, Esq.
MARK J. HILL & ASSOCIATES, P.C.
400 North Church Street
Suite 250
Moorestown, New Jersey 08057
    Attorneys for Defendant One Beacon Insurance Group

Cheryl M. Nicolson, Esq.
MALLON & BLATCHER
12 South Monroe Street
Media, Pennsylvania 19063
    Attorney for Triester, Rossman & Associates, Inc.

Eugene M. Purcell, Esq.
PURCELL, RIES, SHANNON, MULCAHY & O'NEILL, ESQS.
One Pluckemin Way
P.O. Box 754
Bedminster, New Jersey 07921
    Attorney for Third-Party Defendant W. Hargrove Demolition
    Co., Inc.

**SIMANDLE,** District Judge:

## I.    INTRODUCTION

This action arises from the structural collapse of a building at 326 Market Street, Camden, New Jersey.  Plaintiff NN&R, Inc. ("NN&R"), a New Jersey corporation and the owner of a restaurant and apartment units located at that address, alleges that the building was severely damaged in February 2000 when the contiguous property collapsed and was then legally demolished. Prior to that event, CGU Insurance, the predecessor to OneBeacon Insurance Group ("OneBeacon"), issued insurance policies to NN&R through Triester, Rossman & Associates, Inc. ("Triester" or "TRA") that provided property and liability coverage.  The factual and procedural history of this matter is set forth more fully in the Court's opinion of June 26.  NN&R, Inc. v. One Beacon Ins. Group, No. 03-5011, 2006 U.S. Dist. LEXIS 43109 (D.N.J. June 26, 2006).

Currently pending before the Court are motions in limine of Defendants OneBeacon [Docket Item 83] and Triester [Docket Item 97] to exclude or limit the testimony and report of Plaintiff's proposed expert, James Klagholz, and a motion by OneBeacon for summary judgment against Triester [Docket Item 85] upon Triester's cross-claims for indemnification and contribution as well as OneBeacon's claim for indemnification.  The Court heard oral argument on these and other motions on Wednesday, May 18,

2006[1], and in its June 26, 2006 opinion, the Court reserved

decision on the motions currently pending.  Because the Court

finds that Klagholz's opinion is, in large part, sufficiently

reliable to be admitted at trial under Fed. R. Evid. 702 but that

certain aspects of his testimony would be speculative or

irrelevant, the Court will deny the motions in limine in part and

grant them in part, as explained below.  Because the Court finds

that there is a genuine issue of material fact as to whether

Triester failed to notify Plaintiff of the insurance coverage

change and as to whether Triester and OneBeacon have rights of

indemnification, the Court will deny, in part, OneBeacon's motion

for summary judgment against Triester, as explained below.

However, because the Court finds that there is no genuine issue

of material fact as to Triester's right of contribution, the

Court will grant OneBeacon's motion for summary judgment in part

and dismiss that claim.

**II.  DISCUSSION**

    **A.  Motion to Exclude Testimony of Klagholz**

    Plaintiff seeks to admit the expert testimony of James

Klagholz, a licensed insurance producer in New Jersey, to

---

[1]  Although there was no extensive discussion of the motions
in limine at that hearing, the Court does not need an additional
hearing because the parties were given an opportunity to be heard
at that time and have presented the Court with sufficient
briefing on the issue as well as the expert's report and excerpts
from his deposition, from which the Court can decide the motions
pursuant to Rule 78, Fed. R. Civ. P.

establish that Defendants, OneBeacon and Triester, deviated from the established customs of the insurance industry in their dealings with Plaintiff.  Defendants claim that the Court should exclude Klagholz's testimony because his opinions do not meet the standards for reliability set forth in Fed. R. Evid. 702, <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993) and <u>Kumho Tire v. Carmichael</u>, 526 U.S. 137 (1996).  Defendants argue that Klagholz's opinions are not reliable because they are not supported by facts and Klagholz did not use a reliable methodology to reach them.  Plaintiff opposes the motion <u>in limine</u>, arguing that its expert's opinions are reliable because they are based on sufficient facts to which he applied a proper methodology.  Plaintiff argues that the facts on which its expert relied are not in dispute and, thus, it was not improper for him to learn of them through communications with Plaintiff's counsel rather than through firsthand examination of the insurance claim files.  Further, Plaintiff argues, after Klagholz issued his report, counsel supplied the expert with all the relevant insurance claim documents.  As to methodology, Plaintiff argues that because Plaintiff's expertise is based on his experience and training, it was appropriate under <u>Kumho Tire</u> for him to render his opinions based on that experience.

Federal Rule of Evidence 702, which governs the admission of expert testimony in federal court, provides as follows:

4

> If scientific, technical, or other
> specialized knowledge will assist the trier
> of fact to understand the evidence or to
> determine a fact in issue, a witness
> qualified as an expert by knowledge, skill,
> experience, training, or education, may
> testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony
> is the product of reliable principles and
> methods, and (3) the witness has applied the
> principles and methods reliably to the facts
> of the case.

In other words, when the Court evaluates proffered expert

testimony, it must consider three requirements:

> (1) qualifications - whether the expert is
> qualified to speak with authority on a
> particular subject or issue; (2) reliability
> – whether the expert's methodology is sound
> and whether his or her opinion is supported
> by "good grounds;" and (3) fit – whether
> there is a relevant "connection between the
> scientific research or test result to be
> presented and particular disputed factual
> issues in the case."

Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 494 (D.N.J.

2002) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717,

741-43 (3d Cir. 1994)).  The burden is on the proponent of the

testimony to prove its admissibility by a preponderance of proof.

Id. at 744 (citing Bourjaily v. United States, 483 U.S. 171, 175

(1987)).  However,

> [t]his standard is not intended to be a high
> one, nor is it to be applied in a manner that
> requires the plaintiffs "to prove their case
> twice -- they do not have to demonstrate to
> the judge by a preponderance of the evidence
> that the assessments of their experts are
> correct, they only have to demonstrate by a

> preponderance of evidence that their opinions
> are reliable."

Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000) (quoting

Paoli, 35 F.3d at 744).

Defendants claim that Mr. Klagholz's opinion is not reliable

under Rule 702.  To be reliable, an expert's opinion must be

"based on the 'methods and procedures of science' rather than on

'subjective belief or unsupported speculation.'"  Paoli, 35 F.3d

at 742 (quoting Daubert, 509 U.S. at 590).  Defendants claim that

Mr. Klagholz relied on facts presented to him by Plaintiff's

counsel and employed no reliable methodology in formulating his

conclusions.  Plaintiff counters that the opinion is reliable

because the facts Mr. Klagholz used are undisputed and the attack

on methodology is misplaced, as Mr. Klagholz's opinion is based

not on scientific testing, but on his experience working in the

insurance industry.  As Kumho confirmed, areas of reliable

methodology are not confined to the scientific, but extend to

non-scientific disciplines and professions as well.

Although Plaintiff correctly argues that the Court should

apply a unique evaluative framework to proffered non-scientific

expert testimony, Defendants correctly point out that all expert

testimony must be reliable and relevant.

> The objective of [the Court's gatekeeping
> role] is to ensure the reliability and
> relevancy of expert testimony.  It is to make
> certain that an expert, whether basing
> testimony upon professional studies or

> personal experience, employs in the courtroom
> the same level of intellectual rigor that
> characterizes the practice of an expert in
> the relevant field.

Kumho, 526 U.S. at 152.  Further, "the trial judge must have

considerable leeway in deciding in a particular case how to go

about determining whether particular expert testimony is

reliable."  Id.  Thus, even when the proffered testimony is not

scientific and the expert is concededly qualified based on

specialized experience, as in this case, the Court retains an

obligation to determine the reliability of the proffered

testimony under Rule 702.

     In Klagholz's report, he indicates familiarity with several

pieces of correspondence between the parties and quotes documents

relevant to formulating an opinion as to whether Defendants

adhered to the customs of the New Jersey insurance industry.

These opinions appear to the Court to be formulated after

reviewing the correspondence between the parties as well as

Plaintiff's version of the facts.  Defendants' claims that

Klagholz deviated from his preferred method of evaluation by

failing to examine the claim files personally, bolstered by

Klagholz's deposition testimony, are proper subjects for cross-

examination at trial.  This is not a situation in which

Plaintiff's counsel supplied the expert with a skewed version of

the facts without a footing in the evidence expected to be

offered at trial.  Cf. Crowley v. Chait, 322 F. Supp. 2d 530, 542

(D.N.J. 2004).   Defendants point to no misstatement that Klagholz

relied on that may have tainted his understanding of the parties'

dealings, whether his understandings were derived from real

evidence or form counsel's synopsis.   Although Klagholz's

opinions may be assailable at trial on cross-examination because

he failed to personally examine the insurance claim files or

other key documents, it appears to the Court that the expert's

opinion and methodology are sufficiently reliable and relevant to

meet the requirements of Fed. R. Evid. 702.

      However, if an expert's opinion is based upon conjecture or

speculation, it may be stricken.   <u>Fedorczyk v. Caribbean Cruise</u>

<u>Lines, Ltd.</u>, 82 F.3d 69, 75 (3d Cir. 1996).   Portions of

Klagholz's report are based merely on conjecture and, therefore,

the Court will grant the motion in part, strike these portions of

the report and preclude the expert from testifying about them at

trial.   In paragraph 10 of his report, Klagholz opines that

Plaintiff would have "maintained the appropriate amount of

insurance for the building" if Defendants had behaved

differently.   This is mere speculation and the Court will not

admit that opinion at trial.   Paragraph 13 is a restatement of

this improper speculation.   These statements are inadmissible

because they are based merely on conjecture; experts are not

permitted to make such speculative statements at trial, unaided

by reliable methods, and fact-finders may not consider them.   (Of

course, nothing prevents the insured from offering circumstantial or direct evidence of his own intent regarding insurance coverage.)

Furthermore, certain elements of the expert's report are inadmissible because they are not relevant to any fact at issue. In its June 26 opinion, the Court determined that there was no mid-term reduction in Plaintiff's insurance coverage, and even if there had been a reduction in the amount or type of coverage, that reduction would be irrelevant to this dispute because Plaintiff accepted the changes.  NN&R, Inc. v. One Beacon Ins. Group, No. 03-5011, 2006 U.S. Dist. LEXIS 43109, at *20-22 (D.N.J. June 26, 2006).  Therefore, the expert's opinions about mid-term reductions in coverage are irrelevant and he is not permitted to testify about the customs in New Jersey regarding such changes nor is he permitted to opine that such a change occurred in this case.  The opinions Klagholz expressed in paragraph 9 of his report that relate to mid-term changes are therefore not admissible.  The accompanying Order will be entered upon this motion.

**B.   Motion for Summary Judgment**

1.  *Summary Judgment Standard*

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a

disputed issue of material fact, the court must view the evidence

in favor of the non-moving party by extending any reasonable

favorable inference to that party; in other words, "the nonmoving

party's evidence 'is to be believed, and all justifiable

inferences are to be drawn in [that party's] favor.'"  Hunt v.

Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is

whether there are "any genuine factual issues that properly can

be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party."  Liberty Lobby, 477 U.S.

at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326,

329-30 (3d Cir. 1995) (citation omitted).

     OneBeacon seeks summary judgment on three issues.  First,

OneBeacon claims Triester is collaterally estopped from arguing

that it provided notice to Plaintiff of the change in business

income loss coverage in Plaintiff's insurance policy.  Second,

OneBeacon claims that Triester had a contractual duty to notify

Plaintiff of the automatic change in business loss coverage and

that its failure to do so requires it to indemnify OneBeacon for

all damages arising from that failure.  And third, OneBeacon

claims that it is entitled to judgment as a matter of law on

Triester's cross-claim for indemnification and contribution from

OneBeacon.  As explained below, the Court will deny summary

jugdment on the first two issues, because genuine issues of material fact remain as to whether Triester notified Plaintiff of the change in business income loss coverage.  The Court will grant summary judgment, in part, on the third issue because Plaintiff has no surviving claim against Triester and OneBeacon for which Triester could assert a contribution claim.

> 2. *Collateral Estoppel*

OneBeacon argues that the findings of the New Jersey Department of Banking and Insurance collaterally estop Triester from arguing that it provided notice to Plaintiff of the change in business income loss coverage in Plaintiff's policy.  Triester argues that the agency's decision is not entitled to preclusive effect because it was not rendered in a quasi-judicial proceeding and did not include Triester.  Specifically, Triester claims that the proceeding was a settlement aided by the Office of the Insurance Claims Ombudsman, who did not hear any testimony or employ any other procedures similar to those used in a court of law.  Therefore, Triester claims, it may continue to assert its notification of Plaintiff as a defense to claims against it by Plaintiff and OneBeacon.

In this diversity action, the Court must apply New Jersey's rules of collateral estoppel in determining whether to give preclusive effect to the prior decision of the New Jersey Department of Banking and Insurance.  <u>Hartmann v. Time, Inc.</u>, 166

F.2d 127, 137-38 (3d Cir.), cert. denied, 334 U.S. 838 (1948).

Under New Jersey law, judicial determinations by administrative

agencies may be entitled to preclusive effect if they meet the

generally-accepted standards for issue preclusion and are

rendered in proceedings that merit such deference.  Olivieri v.

Y.M.F. Carpet, Inc., 186 N.J. 511, 522 (2006).  Under the

generally-accepted standards, collateral estoppel operates to

foreclose relitigation of an issue when the party asserting the

bar shows that: (1) the issue to be precluded is identical to the

issue decided in the prior proceeding; (2) the issue was actually

litigated in the prior proceeding; (3) the court or agency in the

prior proceeding issued a final judgment on the merits; (4) the

determination of the issue was essential to the prior judgment;

and (5) the party against whom the doctrine is asserted was a

party to or in privity with a party to the earlier proceeding.

In Re Estate of Dawson, 136 N.J. 1, 20-21, 641 A.2d 1026 (1994);

Hennessey v. Winslow Twp., 183 N.J. 593, 599 (2005).

     Under New Jersey's additional requirement that the agency

proceedings must be of the type that "merit such deference,"

Olivieri, 186 N.J. at 522, the New Jersey Supreme Court has

indicated that an agency decision must have been rendered in a

quasi-judicial proceeding in order to merit preclusive effect,

id. at 524.  ("There are significant procedural and substantive

safeguards that attend an action presided over by either a judge

or an administrative law judge in this State and to which

collateral estoppel effect is given.")  For example, New Jersey

courts will not give preclusive effect to the informal,

unrecorded hearings of the Unemployment Compensation Board, id.,

or to the non-adjudicative decisions of the Address

Confidentiality Program, Sacharow v. Sacharow, 177 N.J. 62, 77

(2003).  Indeed, New Jersey refuses to apply collateral estoppel

to the decisions of its agencies that have "none of the hallmarks

of a quasi-judicial adjudication - notice, hearing, and the

exercise of judgment on the merits."  Id.

    In this matter there were two phases of agency decision-

making.  In the first phase, there was an investigation by the

Department, which determined, as far as the record reveals, that

"the company" acted "in accordance with the policy contract

provisions, applicable statutes and regulations."  (DOBI 0027).

The Department made this determination based on the written

submissions of Plaintiff, OneBeacon and Triester; however, as the

Department noted in its letter of findings addressed to

Plaintiff, this was not a quasi-judicial determination and the

agency has no authority "to question under oath [or] verify the

validity of statements and written responses.  When parties

disagree as to events and written and/or verbal responses, [the

Department] must consider the situation a question of fact [that]

would need to be addressed in a judicial setting."  (DOBI 0007).

This first decision by the agency is not the decision OneBeacon

seeks to use.  However, OneBeacon argues that because Triester

participated in this phase of the dispute, he was a party to the

agency action and can be precluded from litigating the agency's

later determination.  As discussed below, it is not clear whether

Triester participated in the later phase of the dispute in which

the Department determined that Plaintiff had not been notified of

the policy change.

After the Department's investigator determined that "the

company" had not behaved unlawfully, the Department referred the

matter to the Office of the Insurance Ombudsman.  In this second

phase, the record indicates that the Ombudsman was able to settle

the claim by Plaintiff against OneBeacon in part, by securing

payment of the business interruption portion of Plaintiff's claim

for up to one year.  (DOBI 0006).  In addition, the Ombudsman

sent a letter to OneBeacon that indicates the "issue" to which

OneBeacon seeks to give preclusive effect.  The Ombudsman wrote,

"In this instance, the insured was not informed of the automatic

coverage reduction of his Business Interruption coverage when he

elected to reduce his property coverage to Actual Cash Value from

Replacement Cost coverage."  (DOBI 0029).  OneBeacon claims that

this a finding by the agency that precludes Triester from arguing

that it notified Plaintiff of the policy change.  The Court finds

that this statement is not an agency determination entitled to

preclusive effect in this action.

The record does not indicate, and OneBeacon has failed to show, that this agency determination meets the necessary elements of collateral estoppel.  Although the issue to be precluded might be identical to the issue decided in the prior proceeding, the issue was not actually litigated in the prior proceeding; the agency did not issue a final judgment on the merits; the determination of the issue was not essential to the prior decision, a settlement; and it does not appear that Triester was a party to the proceeding before the Ombudsman.  Further, OneBeacon has not shown that the proceedings before the Ombudsman were sufficiently similar to judicial proceedings to warrant this Court's application of issue preclusion.  See Olivieri, 186 N.J. at 524 (no collateral estoppel if new determination of issue is warranted by differences in quality or extensiveness of procedures).  The letters from the Department that OneBeacon submitted indicate that there was a settlement after an investigation and not a determination of facts, as there would be in a judicial proceeding.  The Court finds that the informal decision of the Insurance Ombudsman is not the type of agency decision that is entitled to such deference under New Jersey law and therefore will deny the motion for summary judgment insofar as it seeks to preclude Triester from arguing that it notified Plaintiff of the reduction in business interruption loss

15

coverage.

        3. *Indemnification of OneBeacon for Failure to Notify*

    For similar reasons, the Court will deny summary judgment on

OneBeacon's claim that Triester must indemnify it for any damages

caused by Triester's alleged failure to notify Plaintiff of

changes in the business loss coverage.  Although there is a

contract between OneBeacon and Triester that includes an

indemnification provision ("agency agreement"), genuine issues of

material fact exist as to whether Triester failed to notify

Plaintiff of the policy change, whether any losses incurred by

OneBeacon were the "direct result" of Triester's actions, and

whether OneBeacon contributed to Triester's actions.  Because the

agency agreement on which OneBeacon bases its indemnification

claim requires that these facts be resolved before the agent's

indemnification obligation arises, the Court must deny

OneBeacon's motion for summary judgment as to this claim.

        4.  *Triester's Contribution and Indemnification Claims*

    On July 19, 2004, Triester filed a cross-claim against

OneBeacon for contribution and/or indemnity.  OneBeacon argues

that Triester's claims against it for contribution and

indemnification are mutually exclusive because contribution

claims are available for joint tort liability while

indemnification is available only as a matter of contract.

Further, OneBeacon claims that its only potential liability would

                                  16

be the indemnity obligations in its agency agreement with

Triester and that those claims must fail by the terms of the

agreement because the facts do not support a finding of its

liability.  Triester claims that Plaintiff has claims against it

and OneBeacon for which a jury might find them jointly and

severally liable and in which case Triester could seek

contribution for OneBeacon's share of those damages.  In

addition, Plaintiff claims, the agency agreement between it and

OneBeacon gives it a contractual right to seek indemnification

for any damages – including attorney's fees and costs –

associated with defending an action that OneBeacon's errors or

omissions caused.

    While OneBeacon correctly points out that there is a

difference between contribution and indemnification, the two

claims are not mutually exclusive.  The Court agrees with

Triester that it would be able seek contribution from OneBeacon

if the parties were held liable to Plaintiff as joint tortfeasors

and Triester pays more than its share of the liability, N.J.S.A.

2A:15-5.1 to -5.3; however, there are no surviving tort claims

against the Defendants for which they could be held jointly and

severally liable.  Therefore, the Court will grant summary

judgment to OneBeacon on Triester's contribution claim.

    Nevertheless, the agency agreement between OneBeacon and

Triester may provide Triester the right to indemnification for,

among other things, attorney's fees that it may incur as the result of OneBeacon's errors or omissions.  Therefore, the Court will deny OneBeacon's motion for summary judgment with regard to Triester's indemnification claim.

### III.   CONCLUSION

For the reasons set forth in this opinion, the Court will deny in part and grant in part the motions in limine and exclude portions of the expert's opinion that are conjectural or irrelevant; deny OneBeacon's motion for summary judgment against Triester with regard to OneBeacon's claims for issue preclusion and indemnification and Triester's claim for indemnification; and grant OneBeacon's motion for summary judgment as to Triester's right of contribution and dismiss that claim.

The accompanying Order will be entered.


**September 29, 2006**                        s/ **Jerome B. Simandle**
Date                                              JEROME B. SIMANDLE
                                                  United States District Judge


18